UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACCENTS IN STERLING, INC. d/b/a RARE EARTH GALLERY,<br><br>*Plaintiff*,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE GROUP, LIBERTY MUTUAL INSURANCE COMPANY, and LIBERTY MUTUAL INSURANCE,<br><br>*Defendant*. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Accents in Sterling Inc. d/b/a/ Rare Earth Gallery ("Plaintiff" or "Rare Earth"), brings this Complaint, alleging against Defendant, Liberty Mutual Insurance Group, Liberty Mutual Insurance Company, and Liberty Mutual Insurance ("Defendant" or "Liberty"), as follows:

### NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down, and the suffering of physical harm and impact and damages, within Plaintiff's business premises and/or within the immediate area surrounding and outside its business premises, Plaintiff shut its doors for customers on April 3, 2020.

3. Plaintiff's insurance policy provides coverage for all non-excluded business losses and thus provides coverage here.

1

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been suffered and sustained, which losses are in an amount greater than $150,000.00.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Defendant. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6. This Court has personal jurisdiction over Defendant because it is headquartered in Massachusetts. At all relevant times Defendant has engaged in substantial business activities in Massachusetts. At all relevant times Defendant transacted, solicited, and conducted business in Massachusetts through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Massachusetts.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in Massachusetts and within the District of Massachusetts. Further many of the Defendant's decisions that were made with regard to Plaintiff's policy where made in Massachusetts.

## PARTIES

8. At all relevant times, Plaintiff Rare Earth has been authorized to do business in Arizona. Rare Earth owns, operates, manages, and/or controls a retail location at 6401 E. Cave Creek Road, Scottsdale, Arizona 85331 ("Insured Property"). Plaintiff's mailing address is 6401 E Cave Creek Road, Cave Creek, Arizona 85331. Plaintiff is a citizen of Arizona.

9. At all relevant times, Defendant, Liberty Mutual Insurance Group, a Massachusetts

2

corporation maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  Defendant is a citizen of Massachusetts

10.	At all relevant times, Defendant, Liberty Mutual Insurance Company, a Massachusetts corporation, maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. Defendant is a citizen of Massachusetts.

11.	At all relevant times, Defendant, Liberty Mutual Insurance, a Massachusetts corporation, maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  Defendant is a citizen of Massachusetts.

12.	At all relevant times, Defendant issued a policy to Rare Earth effective May 11, 2019 until May 11, 2020. The policy number is BZS586612992 ("the Policy"). *See* Declaration, attached as Exhibit 1.

13.	The Policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination, and additional coverage.

14.	Plaintiff submitted a claim for a date of loss April 6, 2020 pursuant to its policy. Defendant rejected Plaintiff's claim for coverage, claiming that the Civil Authority Coverage did not apply because Plaintiff did not suffer damage to its property, that the Contingent Business Interruption coverage did not apply because of lack of damage to the property and that there was no coverage because of the Virus Exclusion Clause.

15.	The denial of coverage was wrong under the circumstances of this matter.

## FACTUAL BACKGROUND

### I.   Insurance Coverage

16.	Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures for a variety of reasons, including by order of Civil Authority.

17. Under the Policy, business interruption insurance coverage is extended to apply to, *inter alia,* the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

18. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

19. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown. The Virus Exclusion does not apply to this pandemic and nowhere in the policy is it mentioned that coverage is excluded when a pandemic occurs.

## II. The Coronavirus Pandemic

20. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the Property.

21. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

22.     The CDC has issued guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials— "fomites"—for up to twenty-eight (28) days.

24.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**III.   Civil Authority**

25.     On March 11, 2020, the Governor of Arizona declared a Public Health Emergency related to the COVID-19 pandemic.

26.     On March 15, 2020, the Governor of Arizona, Doug Ducey, closed all public schools.

27.     On March 17, 2020, the Governor of Arizona declared that all gatherings of more than 10 people were discouraged.

28.     On April 1, 2020, the Governor Ducey, issued the closure of non-essential businesses, including retail stores like the Plaintiff. This order is scheduled to remain in effect until May 4, 2020.

29.     Plaintiff's business is unable to operate due to the stay-at-home orders for public safety issued by the Governor of Arizona and has submitted a claim to its insurance carrier related to such loss.

30.     Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. **Business interruption insurance**, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. **But if I had it I'd expect to be paid**. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

31. The President is articulating a few core points:

    a. Business interruption is a common type of insurance.

    b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c. This pandemic should be covered unless there is a specific exclusion for pandemics.

    d. If insurers deny coverage, they would be acting in bad faith.

32. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

## IV. Impact on Plaintiff

33. As a result of the Orders referenced herein, Plaintiff shut its doors to customers on April 1, 2020 up until May 4, 2020.

34. Prior to April 1, 2020, Plaintiff was opened from 9:30 am to 5:30 pm daily.

35. Plaintiff suffered loss prior to the shutdown of its stores on April 1, 2020. The loss also began with social distancing restriction provided by the State.

36. Plaintiff's businesses are not a closed environment, and because people—staff, customers, community members, and others—constantly cycle in and out of the Property, there is an ever-present risk that the Insured Property are contaminated and would continue to be contaminated.

37. Businesses like the Plaintiff are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

38. Plaintiff's businesses are also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

39. The virus is physically impacting Plaintiff. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

40. A declaratory judgment determining that the coverage provided under the Policy will prevent Plaintiff from being left without vital coverage required to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

41. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

42. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

43. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies, *inter alia,* that:

    a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here and those exclusions do not apply to a pandemic situation;

    d. The Orders trigger coverage;

    e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in Arizona due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters;

    f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

    g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

44. Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

45. Plaintiff further seeks a Declaratory Judgment to affirm that the Order triggers coverage.

46. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in Arizona due to physical loss or damage from the Coronavirus and/or the pandemic that the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

    a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

    b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

    c. For a declaration that the Orders trigger coverage under the Policy.

    d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Arizona due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

    e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

  f. For such other relief as the Court may deem proper.

TRIAL BY JURY IS DEMANDED

  Plaintiff hereby demands trial by jury.

Dated: May 19, 2020          Respectfully submitted,

                 /s/ Anthony Tarricone
                 Anthony Tarricone,  BBO #492480
                 Michael D. Lurie, BBO #553024
                 **KREINDLER & KREINDLER LLP**
                 855 Boylston Street, Suite 1101
                 Boston, MA 02116
                 atarricone@kreindler.com
                 mlurie@kreindler.com
                 Telephone:  617-424-9100
                 Facsimile: 617-424-9120

                 Arnold Levin, Esq.
                 Laurence Berman, Esq.
                 Frederick Longer, Esq.
                 Daniel Levin, Esq.
                 **LEVIN SEDRAN & BERMAN LLP**
                 510 Walnut Street, Suite 500
                 Philadelphia, PA 19106-3697
                 Telephone: (215) 592-1500
                 alevin@lfsblaw.com
                 flonger@lfsblaw.com
                 dlevin@lfsblaw.com

                 Richard M. Golomb, Esq.
                 Kenneth J. Grunfeld, Esq.
                 **GOLOMB & HONIK, P.C.**
                 1835 Market Street, Suite 2900
                 Philadelphia, PA 19103
                 Telephone: (215) 985-9177
                 Facsimile: (215) 985-4169
                 rgolomb@golombhonik.com
                 kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*