## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ACCENTS OF STERLING, INC., d/b/a RARE EARTH GALLERY** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| **OHIO SECURITY INSURANCE COMPANY,** | ) ) ) ) |
| **Defendant,** | ) ) ) ) |

**Case No. 20-cv-11005-DJC**

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                    **May 25, 2021**

### I.    Introduction

Plaintiff Accents on Sterling, Inc., d/b/a Rare Earth Gallery ("Accents") filed this lawsuit against Defendant Ohio Security Insurance Company ("Ohio Security") seeking coverage under its insurance policy (the "Policy") for property damage, business income loss and other expenses incurred due to the COVID-19 pandemic. D. 1; D. 27. Ohio Security has moved for judgment on the pleadings, contending that Accents' losses are not covered under the Policy. D. 34. For the reasons stated below, the Court ALLOWS Ohio Security's motion for judgment on the pleadings.

### II.    Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) is "ordinarily accorded much the same

treatment" as a Rule 12(b)(6) motion.  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006).  To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in their favor.  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings, including the answer.  See Aponte-Torres, 445 F.3d at 54-55.  Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true.  See Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010).  In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice."  R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

## III.    Procedural History

Accents instituted this action on May 26, 2020, D. 1, and filed an amended complaint on November 13, 2020, dropping Liberty Mutual Insurance Group as a defendant, D. 27.  Ohio Security has now moved for judgment on the pleadings, D. 34, and to stay discovery pending resolution of the dispositive motion, D. 37.  On April 8, 2021, the Court heard the parties on the motions and took the matters under advisement.  D. 47.

IV.    **Factual Background**

Unless otherwise indicated, the following summary is based upon the facts as alleged in Accents' amended complaint, D. 27, and to the extent they are not disputed, the facts contained in Ohio Security's answer, D. 33, and the exhibits referenced in or otherwise incorporated into these pleadings.

*1.    The Pandemic*

The World Health Organization ("WHO") declared COVID-19 a pandemic on March 11, 2020. D. 27 ¶ 49. On the same day, Arizona Governor Doug Ducey ("Governor Ducey") declared a public health emergency related to COVID-19, id. ¶ 62, followed by a March 30, 2020 Order instituting a 'Stay Home, Stay Healthy, Stay Connected' policy to slow the spread of the virus and protect Arizona citizens. D. 36-2 at 2.[1] The March 30th Order permitted non-essential businesses to remain open, provided the businesses' activities "do not require in-person, on-site transactions." Id. at 5. The March 30th Order also encouraged such businesses to "maintain at least minimum basic operations that maintain the value of the business' inventory, preserve the condition of the business' physical plant and equipment, ensure security, process payroll and employee benefits, facilitate employees of the business being able to continue to work remotely from their residences, and related functions to include mail pickup." Id. A few days later, on April 1, 2020, Governor Ducey ordered the closure of non-essential businesses until May 4, 2020. D. 27 ¶ 65. Accents owns, operates, and manages a retail location, Rare Earth Gallery, in Scottsdale, Arizona (the "Property"). Id. ¶ 8. Accents suffered loss prior to April 1, 2020, due to social distancing

---

[1] Since the Court can consider facts susceptible to judicial notice, see Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012); McIntyre v. United States, 367 F.3d 38, 42 (1st Cir. 2004), the Court has considered the Executive Orders issued by Governor Ducey (collectively, the "Governor's Orders"). D. 36-1; D. 36-2; D. 36-3.

restrictions in the state, id. ¶ 75, as well as from April 1, 2020 to May 4, 2020, as it had to suspend operation of its business, id. ¶ 76.

    2.    *The Policy*

Ohio Security issued the Policy to Accents for the period from May 11, 2019 to May 11, 2020.  D. 27-1 at 5.  Accents seeks coverage for losses caused by the COVID-19 pandemic under the Policy's Business Income, Extra Expense and Civil Authority provisions.  D. 27 at 18.  For coverage under the Policy, Accents must show "direct physical loss of or damage" to covered property "caused by or resulting from any Covered Cause of Loss."  D. 27-1 at 35.  The Policy describes "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited" under Section I of the Policy.  Id. at 36.   The Business Income and Extra Expense provisions of the Policy also require "direct physical loss" or "damage to property at the described premises" caused by or resulting from a "Covered Cause of Loss."  Id. at 41, 43.  The Extra Expense provision covers expenses the insured "incur[s] during the 'period of restoration' that [the insured] would not have incurred if there had been no direct physical loss or damage to property at the described premises" caused by or resulting from a Covered Cause of Loss.  Id. at 43.  The Civil Authority provision of the Policy provides that:

> [w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Id. at 44.  Ohio Security contends that there is no coverage for Accents' losses under any of these provisions and that such losses are also expressly excluded under the Policy's Virus Exclusion. The Virus Exclusion provides that Ohio Security "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Id. at 54, 56.  The Policy also does not "pay for loss or damage caused by or resulting from . . . [d]elay, loss of use or loss of market." Id. at 57. Accents seeks a declaration that the Governor's Orders trigger coverage under the Policy, that the Policy provides coverage for any current, future and continued civil authority closures of businesses in Arizona due to COVID-19, and that the Policy provides business income coverage in the event COVID-19 has directly or indirectly caused a loss or damage at the Property or the immediate area of the Property.  D. 27 at 18.

V.   **Discussion**

Under Arizona law, the interpretation of a contract is a question of law for the Court.  See Hadley v. Sw. Props., Inc., 116 Ariz. 503, 506 (1977).  "Courts construe an insurance contract according to its plain and ordinary meaning." AMERCO v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 13-cv-2588-PHX-PGR, 2014 WL 2094198, at *3 (D. Ariz. May 20, 2014).  "Unambiguous provisions must be given effect as written," id., and "[w]hen policy language is unambiguous, the court does not create ambiguity to find coverage," id. (internal quotation marks omitted) (quoting Sec. Ins. Co. v. Andersen, 158 Ariz. 426, 428 (1988)).  "An insurer may limit its liability by imposing conditions and restrictions as long as those restrictions are not contrary to public policy." Cooper v. Am. Family Mut. Ins. Co., 184 F. Supp. 2d 960, 963 (D. Ariz. 2002).

A.    **Property Damage**

Accents argues that contamination from the virus, as well as lost functionality of the Property due to the virus, should be considered property damage under the Policy.  D. 27 ¶ 80. The Policy requires "direct physical loss of or damage to" property for coverage to apply.  D. 27-1 at 35.   Courts, considering identical policy language, have held that such policies "clearly require[ ] direct accidental physical loss or accidental physical damage to property."  B St. Grill & Bar LLC v. Cincinnati Ins. Co., No. 20-cv-01326-PHX-SMB, 2021 WL 857361, at *5 (D. Ariz. Mar. 8, 2021) (concluding plaintiff's argument that the property had been rendered non-functioning due to COVID-19 contamination was inadequate where insurance policy required actual physical damage to plaintiff's property for coverage to apply); see Mama Jo's Inc. v. Sparta Ins. Co., 823 Fed. Appx. 868, 879 (11th Cir. 2020) (concluding that an item or structure that needed to be cleaned had not suffered a "direct physical loss");  Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co., 400 F.3d 613, 616 (8th Cir. 2005) (affirming the district court's ruling that a supplier's inability to function after power outage did not constitute direct physical loss or damage under an insurance contract).   Contamination that requires a need "to clean surfaces that could host [a] virus does not constitute actual physical damage entitling [the insured] to coverage under the policy."  B St. Grill & Bar LLC, 2021 WL 857361, at *5 (citing Uncork and Create LLC v. Cincinnati Ins. Co., No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) (noting that "[b]ecause routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover . . .")).

With respect to Accents' inability to utilize the Property due to the government's response to the COVID-19 pandemic amounts to "physical loss of or damage to" property, such argument also fails.  "Where the language of [a] policy is clear, the Court shall 'afford it its plain and ordinary

meaning and apply it as written.'" <u>Nat'l Fire Ins. Co. of Hartford v. James River Ins.</u>, 162 F. Supp. 3d 898, 904 (D. Ariz. 2016), <u>clarified on denial of reconsideration</u>, No. 14-cv-00765-PHX-JAT, 2016 WL 2606984 (D. Ariz. May 6, 2016) (internal quotation marks omitted) (quoting <u>Liberty Ins. Underwriters, Inc. v. Weitz Co.</u>, 215 Ariz. 80, 83 (Ct. App. 2007)); <u>St. Paul Fire & Marine Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, No. 10-cv-00527-TUC-JGZ, 2012 WL 4514071, at *13 (D. Ariz. Oct. 1, 2012) (recognizing that "Arizona law directs the Court to look to the policy's plain meaning" when construing insurance coverage). The term "'physical,' which 'involv[es] the material universe and its phenomena' and 'pertain[s] to real, tangible objects,'" modifies the term "loss," which is "defined as . . . 'the disappearance or diminution of value.'" <u>SAS Int'l, Ltd. v. Gen. Star Indem. Co.</u>, No. 20-cv-11864-RGS, 2021 WL 664043, at *2 (D. Mass. Feb. 19, 2021) (emphasis omitted) (citing Black's Law Dictionary (11th ed. 2019)). Similarly, "[t]he term 'damage' also entails '[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body.'" <u>Id.</u> (concluding that "[t]aken together, these terms require some enduring impact to the actual integrity of the property at issue").

Here, although Accents was unable to utilize the Property for the term of the Governor's Orders, this does not amount to a "physical loss of or damage to" the Property, given the plain meanings of "physical loss" or "damage." <u>See</u>, <u>e.g.</u>, <u>Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n</u>, 953 F.2d 1387 at *1 (9th Cir. 1992) (affirming district court's holding that contamination of property was an economic loss rather than a physical loss given "the building remained physically unchanged"); <u>1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.</u>, No. 2:20-cv-862, 2021 WL 147139, at *5 (W.D. Pa. Jan. 15, 2021) (concluding that "a determination that 'direct physical loss of or damage to' the property can refer to mere economic losses caused by governmental orders limiting the use of property (while not impacting the physical structure itself)

would stretch the language beyond the plain meaning of its terms and beyond the interpretive authority of the Court"); Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd., No. 8:20-cv-771-T-36JSS, 2020 WL 7398646, at *6 (M.D. Fla. Dec. 17, 2020) (concluding coverage for losses related to COVID-19 was precluded as "there must be tangible damage to property for a 'direct physical loss' to exist"). Moreover, to the extent Accents argues that "physical loss of" should be read as a general loss of use, the Policy includes an exclusion for such loss, stating that the insurer "will not pay for loss or damage caused by or resulting from . . . [d]elay, loss of use or loss of market." D. 27-1 at 57. To follow Accents' asserted interpretation would fail to give meaning to all the Policy's terms and render the "loss of use" exclusion superfluous. See Michael Cetta, Inc. v. Admiral Indem. Co., No. 20-cv-4612 (JPC), 2020 WL 7321405, at *9 (S.D.N.Y. Dec. 11, 2020) (concluding that that the insured's argument "that 'direct physical loss of' [ ] 'must encompass loss of use' . . . is an untenable leap in logic" where "the terms 'loss' and 'damage' are not superfluous" (emphasis omitted)). Accordingly, an examination of the plain language of the Policy requires the Court to conclude there was no direct physical loss of or damage to the Property.

**B.    Virus Exclusion and Civil Authority Coverage**

Even if Accents' argument that possible virus contamination or its inability to utilize the Property during the term of the Governor's Orders amounted to physical loss or damage under the Policy, such arguments would still fail given the Virus Exclusion. The Virus Exclusion excludes any "loss or damage caused directly or indirectly by . . . [a]ny virus." D. 27-1 at 56. Accents argues the exclusion's plain language contemplates temporary contamination and disease and fails to use language specific to a pandemic. D. 39 at 23. Accents furthers that a reasonable reading of the Virus Exclusion language would not suggest that a pandemic was excluded, id. at 24, and even

if it did, the damage Accents incurred was a result of the civil authority orders, which is covered under the Policy's civil authority coverage.

The Court must interpret terms of an insurance policy "in an ordinary and popular sense as would a [person] of average intelligence and experience." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990) (internal quotation marks omitted) (quoting Allstate Insurance Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir. 1985)).  Where policy language is clear, "a court may not take the easy way out by inventing ambiguity, and then resolving it to find coverage where none exists under the policy." Perkins v. Emps. Mut. Cas. Co., No. 20-cv-01232-PHX-DWL, 2020 WL 7425865, at *4 (D. Ariz. Dec. 18, 2020) (internal quotation marks omitted) (quoting Sec. Ins. Co. of Hartford v. Andersen, 158 Ariz. 426, 428 (1988)).  Here, the Court reads no ambiguity in the Virus Exclusion's language.  COVID-19 is a respiratory disease caused by a coronavirus.  Whether the Court follows Accents' argument that its losses were caused by alleged contamination of the Property or Accents' loss of access to the Property due to the Governor's Orders, each reported loss is, at minimum, "loss or damage caused . . . indirectly by" the virus.  D. 27-1 at 56; see Border Chicken AZ LLC, 2020 WL 6827742, at *4 (holding that "it is unambiguous that the Policy does not cover any losses directly or indirectly caused by the virus" where Virus Exclusion states coverage is barred for "loss or damage caused directly or indirectly" by a virus).

Accents asserts that its loss is not solely caused by the virus itself, but also the Governor's Orders in response to the virus, asserting that "[t]he Virus Exclusion does not apply because Plaintiff's losses were not solely caused by a virus," but instead "were caused by the entry of civil authority orders to mitigate the spread of COVID-19."  D. 27 ¶ 40.  Accents argues that the payout for the Policy's Civil Authority coverage, which it asserts is applicable here, comes from business income loss or extra expense caused by the Civil Authority orders.  D. 39 at 22.  Accents furthers

that given this delineation, when Civil Authority coverage is invoked, Ohio Security would pay

for Accents' business income loss or extra expense caused by the civil authority orders—not the

damage caused by the virus, and that therefore, the Virus Exclusion cannot be invoked by Civil

Authority coverage.  Id.  The Virus Exclusion, however, does still apply, despite the Governor's

Orders and despite the different payout sources, as COVID-19—a disease caused by a virus—

remains an indirect cause of Accent's losses.  See Border Chicken AZ LLC, 2020 WL 6827742,

at *4 (holding that "regardless of what type of losses the Civil Authority provision covers," and

plaintiff's distinction between whether payout comes from business income loss or extra expense

rather than property damage, "it is unambiguous" that the virus exclusion applies).  The Civil

Authority provision states that "[w]hen a Covered Cause of Loss causes damage to property other

than property at the described premises" Ohio Security will pay for the actual loss of business

income and necessary extra expense "caused by action of civil authority that prohibits access to

the described premises."  D. 27-1 at 44.  The Virus Exclusion makes clear that "loss or damage

caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism" is not a

Covered Cause of Loss.  Id. at 57.  Even if the Virus Exclusion could have been more specifically

worded by including the term 'pandemic,' as Accents asserts, this alone does not render the

exclusion ambiguous or unclear.  Border Chicken AZ LLC, 2020 WL 6827742, at *4.

    Moreover, Accents does not dispute that the Governor's Orders were "to mitigate the

spread of COVID-19."  D. 27 ¶ 40.  The mere fact that these orders, rather than the virus itself,

directly resulted in Accents being unable to access or use the Property, does not invalidate the

exclusion or make it any less clear.  See Border Chicken AZ LLC, 2020 WL 6827742, at *4

(enforcing virus exclusion where plaintiff argued the governor's order, not COVID-19, caused its

business income loss); see also Diesel Barbershop, LLC v. State Farm Lloyds, No. 5:20-cv-461-

DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (concluding that "[w]hile the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community"); Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020) (holding that "even if Plaintiff was able to show that it suffered [ ] loss or damage, coverage would be precluded under the virus exemption provision" where provision "clearly and unequivocally exempts 'loss or damage caused by or resulting from any virus' and the order issued by the mayor was because of the virus); Franklin EWC, Inc. v. The Hartford Finn. Servs. Grp., Inc., No. 20-cv-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (referring to plaintiffs' theory that "the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply" as "[n]onsense"). Accordingly, as the virus either directly or indirectly caused the alleged losses, the Virus Exclusion applies and coverage is barred.

## C.    **Regulatory Estoppel**

Accents argues regulatory estoppel bars Ohio Security from relying on the Virus Exclusion "because of its conduct and any associated conduct of the [Insurance Services Office] to inappropriately obtain the permission of state insurance commissioners or departments to include the language of the Virus Exclusion in its policies." D. 27 ¶ 38. Regulatory estoppel is a "doctrine foreign courts have used to preclude insurers from taking a position contrary to one allegedly presented to a regulatory agency." Border Chicken AZ LLC, 2020 WL 6827742, at *5 (internal quotation marks omitted) (quoting Nammo Talley Inc. v. Allstate Ins. Co., 99 F. Supp. 3d 999, 1005 (D. Ariz. 2015)). Arizona courts "have not recognized the theory of regulatory estoppel." Id. (citing Nammo Talley Inc., 99 F. Supp. 3d at 1005 (concluding that regulatory estoppel did not

apply as "Arizona has never adopted the doctrine of regulatory estoppel")); see Chattanooga Pro. Baseball LLC v. Nat'l Cas. Co., No. 20-cv-01312-PHX-DLR, 2020 WL 6699480, at *3 (D. Ariz. Nov. 13, 2020) (noting that regulatory estoppel has not been adopted by Arizona).  Following Arizona law, this Court is bound by that law "in the absence of an 'indication' or 'subsequent change in state law' suggesting that the decision was incorrect."  Nammo Talley Inc., 99 F. Supp. 3d at 1005 (quoting Owen by & through Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983)).  Accordingly, Accents' regulatory estoppel claim fails.

### D.    Reasonable Expectations

Accents argues that, even if their claim is foreclosed by the terms of the Policy, they may nevertheless recover because its "reasonable expectation . . . was that the Policy included coverage when a civil authority forced closure of the business for an issue of public safety such as that involving the COVID-19 pandemic in the immediate area surrounding the Insured Property."  D. 27 ¶ 36.  Under the doctrine of reasonable expectations, "Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a limited variety of situations."  Gordinier v. Aetna Cas. & Sur. Co., 154 Ariz. 266, 272 (1987).  "Terms can frustrate the insured's reasonable expectations in four situations," including:  (1) "[w]here the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured"; (2) "[w]here the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage"; (3) "[w]here some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured"; and (4) "[w]here some activity reasonably attributable to the insurer has

induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy." First Am. Title Ins. Co. v. Action Acquisitions, LLC, 218 Ariz. 394, 401 (2008).

Here, none of the reasonable expectation factors apply. Although the Policy did not specify "pandemic" in its Virus Exclusion, this omission does not render the Policy's terms no longer understandable by a reasonably intelligent consumer. The Policy states that Ohio Security "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." D. 27-54, 56. Accents does not allege any activity conducted by Ohio Security that created an objective impression of coverage or induced Accents to believe coverage for losses resulting from a pandemic were available, see generally D. 27, nor does Accents provide any basis for the Court to conclude that the exclusion cannot be understood by a reasonably intelligent consumer. First Am. Title Ins. Co., 218 Ariz. at 401. Accordingly, the reasonable expectations doctrine does not apply.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS the motion for judgment on the pleadings, D. 34.[2]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] Given the Court's ruling, Ohio Security's motion to stay discovery is denied as moot. D. 37.